No. 31,120.

FRANK GAUDREAU, doing business as the CENTRAL GARAGE et al., *Appellee*, v. FRED U. T. SMITH et al., *Appellees*, H. C. BENNETT, Intervener, *Appellant*.

(21 P. 2d 330.)

Opinion filed May 6, 1933.

*H. W. Hart, Glenn Porter, Enos E. Hook, Edw. H. Jamison* and *Getto McDonald,* all of Wichita, for the appellant.

*W. H. Carpenter, W. R. Carpenter,* both of Marion, *Elwin Ware, W. L. Huggins,* both of Eureka, *Chas. G. Yankey, Harvey C. Osborne, John Gregory Sears,* all of Wichita, *Edwin Anderson* and *Archie T. MacDonald,* both of McPherson, for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action to foreclose liens for labor and materials on an oil and gas lease. The liens of various claimants were allowed and there is no controversy with respect to them. The appellant Bennett was denied a lien and the correctness of that ruling is the only matter involved in this appeal.

Fred U. T. Smith was the owner of an oil and gas lease on real estate in McPherson county and entered into a contract with defendant Kightlinger for drilling a test well, whereby Smith was to furnish the casing and derrick and Kightlinger was to furnish the tools, labor, fuel and water for drilling and completing the well. In carrying out his part of the agreement, Smith entered into a contract with the appellant Bennett whereby Bennett agreed to furnish certain sizes and amounts of casing, and the necessary clamps and shoes, and to deliver said casing as required on the lease at his own expense. Smith agreed to execute an assignment of an undivided three-sixteenths interest in the entire lease to Bennett and deposit it in a Wichita bank for delivery to Bennett, under certain conditions, which were performed, and the assignment was delivered. Under the contract, Smith agreed not to permit liens to accrue and, in case any mechanic's liens were filed, he agreed to release same in thirty days after filing, and if liens should be filed after such release, then Smith agreed to purchase the casing, shoes and clamps and to pay for the same within ten days after the filing of such additional lien or liens. If the well was a dry hole, Smith agreed to pull the casing and deliver it to Bennett. If the well was a commercial producer, Smith agreed to pull all casing not used in operation of the well and deliver it to Bennett and to pay Bennett for the casing not removed from the well. Before Bennett was required to deliver any casing, Smith was to give him a bond in the penal sum of $10,000 conditioned upon Smith's performance. Smith gave Bennett a bond for $8,000, but Bennett, nevertheless, furnished the casing. The contract contained other provisions not necessary to be noticed here, and the following:

"The assignment of the three-sixteenths interest in the lease to Bennett shall provide that Smith retains the operation and further development of the lease; that Bennett's share of all oil and gas produced and to be produced from said lease shall be subject to the payment of all further cost of operation and development.

"In case of production in the first well Bennett shall stand his proportionate share of the cost of all equipment placed in the well and used for the operation thereof, that is, he shall pay three-sixteenths ($\frac{3}{16}$) part of such cost and no more, and he shall own all of said equipment in the proportion of a three-sixteenth ($\frac{3}{16}$) interest therein, and when said equipment ceases to be used on the said lease it shall be sold and the proceeds divided. Bennett's portion

of the oil and gas produced from said lease shall never be liable for more than three-sixteenths ($\frac{3}{16}$) part of the costs of operation and development.

. . . . . . . . . . . . .

"Until purchased and paid for by Smith, the entire legal and equitable title to all casing, shoes and clamps furnished by Bennett shall be and remain in Bennett."

Upon trial, Bennett produced his proof as to the casing, clamps and shoes furnished by him and the amounts he claimed on account, that he had received the assignment of the lease, and that Smith had given him bond in the penal sum of $8,000. Other claimants produced their proofs, and the court rendered judgment against defendant Kightlinger and in favor of lien claimants for a total of $4,063.30, and against defendant Fred U. T. Smith and in favor of lien claimants for a total of $2,118.50, and made the same coördinate liens of equal priority upon Smith's leasehold interest and upon the derrick, casing, machinery, supplies, etc., in, on or about or belonging to the leasehold. Bennett was refused a lien but given judgment against Smith, dependent on the amount of casing, etc., which was or could be returned to him, and the action was continued to determine the amount of such judgment.

Appellant's contention, as stated in his brief, is:

"It is our contention that if equipment furnished to be used in the drilling of an oil or gas well, is of such kind and character that it may be taken by the lien claimants and sold in satisfaction of their liens, by the same token the person so furnishing such material is entitled to a lien for the value of the material so furnished."

The contention, as stated, cannot be true, for it would permit an owner to participate with those who contracted with him. It was held in the *Bridgeport Machine Co. v. McKnab et al.*, 136 Kan. 781, 18 P. 2d 186, that:

"Oil- and gas-lien laws, like other lien laws of this state, are purely statutory and as they confer special privileges they should be strictly construed, so that in determining to whom and for what a lien statute gives a lien a strict construction should generally apply, but after interpreting it to entitle a party to a lien for a particular article or thing, then a liberal interpretation should generally be given as to its enforcement so as to promote the object to be effected."

The statute under which appellant claims, R. S. 1931 Supp. 55-207, recites:

"Any person . . . who shall under contract . . . with the owner of any leasehold . . . perform labor or furnish material, . . . shall have a lien."

Here, by virtue of the contract upon which he relies for a lien, Bennett became an owner of an undivided interest in the leasehold. The contract provided that he was to furnish and deliver pipe for the interest he acquired, and while it provided for sale to Smith, under certain conditions, of a part or all of the pipe furnished, it likewise provided that the pipe was his until paid for. It also provided that Smith retain the operation and development of the lease and that Bennett's share should be subject to the payment of all further cost of operation and development, and that Bennett "shall stand his proportionate share of the cost of all equipment" and that when the equipment ceases to be used it shall be sold and the proceeds divided.

Under a strict construction of the statute, Bennett was not entitled to a lien; as an owner he could not contract with himself. A very similar controversy was involved in *Fees v. Ritchey,* 136 Kan. 221, 14 P. 2d 652, the syllabus of which is:

"Where the owner of an oil and gas leasehold contracts with a party to drill an oil and gas well and agrees to furnish the pipe necessary, and he rents the pipe from another party by conveying a three-thirty-seconds interest in the well to him and agrees to buy the pipe if the well is a producer, and the well turns out to be a dry hole, the party who drilled the well has a lien on the pipe along with the other equipment on the leasehold, and the party from whom the pipe was rented has no lien."

Appellant endeavors to distinguish that case from the present one in "that the owner of the leasehold did not purchase the pipe or casing, but that it was only rented, and the use of the casing was a mere temporary expedient and never became anything more. It was said in that case that the appellant was paid in full according to his agreement for the use of the casing." The distinction attempted is not warranted by the facts. In this case, Bennett undertook to furnish casing for an interest in the lease and, while he undertook to make a sale contract in event of certain happenings, just as was done in the Fees case, he retained the title in himself until he was paid.

The trial court committed no error in adjudging that Bennett was not entitled to a lien on the leasehold and equipment, and the judgment is affirmed.